## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH R. ZEIDERS, | : | CIVIL NO.: 1:19-CV-01740 |
| | : | |
| Plaintiff, | : | |
| | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| | : | |
| ANDREW M. SAUL, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction.

This is a social security action brought under sections 205 and 1631 of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating § 405(g) by reference). The plaintiff, Joseph R. Zeiders ("Zeiders"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. For the reasons set forth below, we will order that judgment be entered in favor of Zeiders and we will direct the Commissioner to award benefits.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 13-1* to 13-*21*.[1]  On March 26, 2012, Zeiders applied for disability insurance benefits and supplemental security income, alleging that he had been disabled since November 1, 2011. *Admin. Tr.* at 92.  The Social Security Administration denied Zeiders' claim initially on July 5, 2012. *Id.*  Following the initial denial of Zeiders' claim, the case went before the Administrative Law Judge Randy Riley ("ALJ Riley"), who concluded that Zeiders, represented by counsel, was not disabled, and denied him benefits on that basis on September 18, 2013. *Id.* at 89.  Zeiders requested review of the ALJ's decision before the Social Security Administration's Appeals Council, which vacated the decision with specific instructions and remanded the matter to ALJ Riley on January 26, 2015. *Id.* at 106.

Following this remand, ALJ Riley conducted a second administrative hearing on April 7, 2015. *Id.* at 33.  On May 27, 2015, ALJ Riley again found that Zeiders was not disabled under the Social Security Act. *Id.* at 10.  On July 24, 2015, Zeiders requested review by the Appeals Council, which denied his request on December 20, 2016. *Id.* at 1, 9.

---

[1] The facts of the case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Zeiders' claim.

In February of 2017, Zeiders filed a complaint with this court seeking judicial review of the Commissioner's final decision denying him benefits. *Joseph Ray Zeiders v. Nancy A. Berryhill*, 4:17-cv-00324, at *doc. 1*. On June 8, 2018, the undersigned ruled that the Commissioner's decision was not supported by substantial evidence and remanded the matter to the Commissioner for further proceedings. *Id.* at *doc. 23*. Specifically, the undersigned concluded that all the parties in this case conceded that the ALJ's decision was not supported by substantial evidence; and that the ALJ did not thoroughly consider Zeiders' mental health in the context of listing 12.05C. *Id.*

The undersigned further concluded that the record contained less than 100 pages of medical records and findings, and it was not obvious as to whether Zeiders' medical impairments met or equaled listing 12.05C. *Id.* Accordingly, the undersigned held that further development of the record was appropriate to determine whether Zeiders mental health impairments met or equaled listing 12.05C. *Id.* In light of these circumstances, the undersigned remanded the case to the Appeals Council pursuant to sentence four of 42 U.S.C. § 405(g). *Id.*

Following the second remand, ALJ Sharon Zanotto ("ALJ Zanotto"), conducted a third administrative hearing on April 2, 2019. *Admin. Tr.* at 455. On July 17, 2019, she issued a decision denying Zeiders' applications for benefits. *Id.* at 430.

3

On October 7, 2019, Zeiders began this action by filing a complaint again seeking judicial review of the Commissioner's final decision denying him benefits. *Doc. 1*. The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 6-7*. The parties entered their consent to magistrate judge jurisdiction on December 19, 2019. *Doc. 9*. The parties have filed briefs, and this matter is ripe for decision. *Docs. 15, 16, 19*.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

4

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Zeiders is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1509,

416.909; 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To satisfy this requirement,

a claimant must have a severe physical or mental impairment that makes it

impossible to do his or her previous work or any other substantial gainful work that

exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20

C.F.R. §§ 404.1505(a), 416.905(a).[2]

The ALJ follows a five-step sequential-evaluation process to determine

whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920.  Under this

process, the ALJ must sequentially determine: (1) whether the claimant is engaged

in substantial gainful activity; (2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age,

education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v),

416.920(a)(4)(i)-(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of*

*Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "that which an

---

[2] A "physical or mental impairment" is defined as an impairment resulting from
"anatomical, physiological, or psychological abnormalities which are demonstrable
by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.
§§ 423(d)(3), 1382c(a)(3)(D).

individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The

7

"ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision Denying Zeiders' Claim.**

On July 17, 2019, the ALJ issued a decision denying benefits to Zeiders. *Admin. Tr.* at 430.  The ALJ first concluded that Zeiders met the insured status requirements of the Social Security Act through December 31, 2013. *Id.* at 435.  At step one of the five-step sequential-evaluation process, the ALJ found that Zeiders had not engaged in substantial gainful activity since November 1, 2011, the alleged onset date. *Id.*  At step two, the ALJ found that Zeiders had the severe impairment of learning disorder, cognitive disorder, and mild intellectual disorder. *Id.* at 436.

At step three of the sequential-evaluation process, the ALJ found that none of Zeiders' impairments met or equaled the severity of the impairments listed under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 436-39.

The ALJ fashioned an RFC, considering Zeiders' limitations from his impairments:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels and his mental capacity limits him to work that would consist of tasks involving simple instructions, occasional decision making and simple judgments; and occasional work setting,

> work process, or tool changes. He cannot perform jobs that would require adherence to precise limits, tolerances, or standards; directing, controlling, or planning the activities of others; influencing people's opinions, attitudes, and judgments. He cannot perform work that involves fast pace production or pace work.

*Id.* at 439.

In making this determination, the ALJ considered Zeiders' testimony that he is unable to work because he has brain damage; that he cannot remember anything and needs instructions repeated to him; that he cannot finish what he starts; that he failed the tenth grade twice; that he failed to obtain his GED; and that he does not handle stress or changes in routine well. *Id.* at 439-40. Additionally, the ALJ considered Zeiders' testimony that his medical impairments affect his ability to bend, sit, kneel, see, and understand; that he experiences pain with his right leg; and that after walking two miles, he must rest for approximately 15 minutes. *Id.*

The ALJ found Zeiders' "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

In addition to the testimony of Zeiders, the ALJ considered Zeiders' treatment records and medical history during the relevant time period. The ALJ noted that the medical record demonstrated that Zeiders had a learning disorder,

cognitive disorder, and mild intellectual disorder. *Id.* at 441.  Additionally, the ALJ

noted that a July 2013 Wechsler Adult Intelligence Scale (Third Edition), revealed

that Zeiders had a full-scale score of 67; a performance score of 69; and a verbal

score of 71. *Id.*  The ALJ also noted that a January 2019 Wechsler Adult

Intelligence Scale (Fourth Edition), revealed that Zeiders had a full-scale IQ of 61.

*Id.*  Addressing Zeiders' mental impairments, however, the ALJ noted that Zeiders

received conservative treatment, including vocational rehabilitation services,

counseling, and medication. *Id.*  Further, the ALJ noted that the longitudinal

treatment notes demonstrated relatively normal mental status examination findings.

*Id.*  For example, the ALJ noted that a June 2012 psychiatric consultative

examination demonstrated that Zeiders was fully oriented with a euthymic mood;

that he had a normal range and intensity of affect; that he had relevant and

goal-directed speech; that he had normal thought content and judgment; and that he

exhibited intact cognitive and executive functions. *Id.*  Similarly, the ALJ noted

that a January 2019 psychiatric consultative examination revealed that Zeiders was

fully oriented; that he had normal motor behavior; that he exhibited fluent speech,

adequate expressive and receptive language; and that he exhibited coherent and

goal-directed thought processes. *Id.*

As for Zeiders' activities of daily living, the ALJ noted that the record

demonstrated that Zeiders went outside at least twice a day; that he experienced no

difficulty sleeping and no problems with his personal care; that he prepared simple meals and performed household chores; that he shopped in stores and took public transportation; that he read the newspaper, watched television, and enjoyed spending time with others; and that he did not drive because his license was suspended after he drove without a license and insurance—which implied that he was mentally and physically capable of driving. *Id.*

Next, the ALJ analyzed the opinions of seven doctors in the case. *Id.* at 441-444.  We turn to the testimony of Dr. Richard Anderson ("Dr. Anderson"), an independent psychological expert, and the ALJ's analysis, because they bear on the issues discussed below. *Id.* at 441-42.  Dr. Anderson testified at the April 2019 administrative hearing. *Id.* at 471-500.  At the hearing, Dr. Anderson initially opined that Zeiders "meets listing 12.05 in the A category . . . [which] was described in the previous versions of the listing 12.05C." *Id.* at 476.  Dr. Anderson clarified that he "guess[ed] it would be 12.05(B).  Actually, B(1)" of the revised 12.05 listing.[3] *Id.*  The ALJ questioned Dr. Anderson about whether evidence

_____

[3] We have difficulty determining whether the ALJ applied listing 12.05C as it existed in 2015 or a more recent revision of listing 12.05.  The ALJ purports to find that "old Listing 12.05 was neither met nor equaled." *Admin. Tr.* at 433.  The conversation between Dr. Anderson and the ALJ at the hearing demonstrates confusion as to which standard the ALJ applied to Zeiders, and the ALJ specifically questions Dr. Anderson regarding whether Zeiders has "*significant* deficits in adaptive functioning." *Compare id.* at 477 (emphasis added) (referencing language contained in the revised version of listing 12.05) *with id.* at

"supports a conclusion that [Zeiders' current intellectual functioning and deficits in adaptive functioning] began before attainment of age 22." *Id.* at 478.  Dr. Anderson responded that "[n]o direct evidence" exists because "[t]here are no records

_____

462 ("ALJ: Well, the prior rules [12.05C] applied for this particular case."). Additionally, the Commissioner concedes in his brief that the ALJ purportedly evaluated Zeiders' claim under 12.05C "as it stood as of May 27, 2015" and analyzed listing 12.05C throughout his brief. *Doc. 16* at 17, 23-26.  Listing 12.05C provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpart. P, App. 1, § 12.05 (2015).  Listing 12.05C

> was amended in 2013 to substitute the label "Intellectual Disability." 78 Fed. Reg. 46499–01 (Aug. 1, 2013). The agency further amended the listing effective January 17, 2017, to substitute the label "Intellectual Disorder" to avoid confusing use of the term "Disability." 81 Fed. Reg. 66138, 66150 (Sept. 26, 2016). The amendments published September 26, 2016, also reorganize Listing 12.05 to eliminate 12.05C and incorporate its requirements into other subsections of Listing 12.05. *Id.* at 66150.

*Myers v. Comm'r of Soc. Sec.*, 684 F. App'x 186, 189 n.1 (3d Cir. 2017).  In its current form, listing 12.05 requires in part that a claimant show "[s]ignificant deficits in adaptive functioning." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05 (2018).  Here, this distinction is significant only insofar as the lack of clarity in the ALJ's reasoning precludes our meaningful review of her listing analysis.

available from the period before he was age 22."[4] *Id.*  Critically, Dr. Anderson then

opined that he thought "it can be assumed that the condition existed at that time

based on the fact that he's described as being in special education." *Id.*  The ALJ

asked Dr. Anderson if it was his "testimony today that [Zeiders] does not meet then

12.05[,]" to which Dr. Anderson replied "[t]hat's correct." *Id.*  The ALJ assigned

significant weight to Dr. Anderson's opinion, though she made no mention of its

rampant inconsistencies, concluding that his opinion was consistent with the

longitudinal treatment notes and consistent with Zeiders' lack of inpatient mental

health treatment or referral to crisis intervention. *Id.* at 442.

At step four of the sequential-evaluation process, the ALJ concluded that

Zeiders was capable of performing his past relevant work as a hand packager and

laborer of stores. *Id.* at 445.  The ALJ then continued to step five and made the

alternative finding that Zeiders could perform other jobs in the national economy,

including working as a conveyor line bakery worker, a small products assembler,

and an electrical accessories assembler. *Id.* at 446.

## V. Discussion.

On appeal, Zeiders challenges the ALJ's decision on two bases: (1) that the

ALJ erred by finding that his intellectual functioning impairment did not meet or

---

[4] Our exhaustive review of the record proves otherwise. *See Admin. Tr.* at 325-29
(indicating enrollment in special education through Zeiders' school records).

equal the requirements of § 12.05C of the listing impairments; and (2) that the ALJ erred by failing to include all of Zeiders' credibly established limitations, including limitations found by the ALJ, in the RFC and hypothetical questions posited to the vocational expert. *Doc. 15* at 4.  Because we conclude that the ALJ erred in evaluating Zeiders' mental impairments under listing 12.05C, we will reverse the decision of the ALJ and direct the Commissioner to award benefits to Zeiders.

## A. Substantial Evidence Does Not Support the ALJ's Step Three Evaluation.

Zeiders' first contention is that the ALJ erroneously concluded, at step three, that his impairments, individually or collectively, did not meet or medically equal listing 12.05C (Intellectual disability).  *Doc. 15* at 17.  In pertinent part, listing 12.05C refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (i.e., the evidence demonstrates or supports onset of the impairment before age 22). 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05C.  To meet listing 12.05C, a claimant additionally must have a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  *Id.*

Zeiders asserts that the ALJ accepted the validity of his 2013 IQ scores (a full scale IQ of 67, a verbal IQ score of 71, and a performance IQ score of 69), and

noted that they were consistent with his 2019 scores (a full scale IQ of 61, a verbal

comprehension index IQ score of 63, and a perceptual reasoning index IQ score of

60), but concluded that his mental impairments did not meet listing 12.05C. *Doc.*

*15* at 8.  Zeiders argues:

> First, the ALJ found that Plaintiff "has no severe physical
> impairments. Thus, he has no physical impairments that impose any
> additional and significant work-related limitations of function.
> Further, I find the claimant's mental limitations are closely related to
> and secondary to his mild intellectual disorder, and his additional
> mental impairments do no[t] cause additional and significant work-
> related limitation of function in addition to those caused by his
> intellectual disorder. Thus, I find the claimant does not [meet] or
> equal old listing 12.05C." (R. 439).

*Id.* at 9.

Zeiders contends that the ALJ's findings are unsubstantiated. *Id.*  First,

Zeiders avers that to meet the criteria of "physical or other mental impairment"

required by listing 12.05C, an impairment need only be "severe" within the

meaning of the regulations, pursuant to 20 C.F.R. §§ 404.1520(c), 416.920(c).[5] *Id.*

Here, the ALJ found at step two that Zeiders suffered from three severe

impairments: (1) learning disorder, (2) cognitive disorder, and (3) mild intellectual

---

[5] Under the regulations, an impairment is considered "severe" if it "significantly
limits an individual's physical or mental abilities to do basic work activities." 20
C.F.R. 404.1520(c).  Further, an impairment is severe if it is "something beyond a
'slight abnormality which would have no more than a minimal effect on the
claimant's ability to do basic work activities.'" *McCrea v. Comm'r of Soc. Sec.*,
370 F.3d 357, 360 (3d Cir. 2004).

disorder.  *Id.*  Thus, Zeiders alleges that his severe cognitive disorder and learning

disorder constitute the additional impairment(s) required under the listing criteria.

*Id.* at 10.  Zeiders further contends that the ALJ erroneously concluded that the

record contained insufficient record evidence that his intellectual disability

manifested before he turned 22.  *Id.* at 15.  Zeiders argues:

> [The] ALJ found "[i]n the alternative" that "there is insufficient
> evidence of record the claimant's intellectual disorder manifested
> before he attained the age of 22" (R. 439). However, the regulation at
> issue did not require "significant" deficits of adaptive functioning
> prior to age 22, as both the ALJ and the medical expert on whose
> testimony she relied believed were required (R. 439, 485). Indeed, the
> medical expert, Dr. Anderson, testified that he could infer based on
> the record that Plaintiff's intellectual disability with adaptive deficits
> began before age 22 (R. 485). He also testified that "what's missing is
> the evidence of a <u>significant</u> deficit in adaptive functioning" (R. 485).

*Id.* at 15-16 (emphasis in original).

Zeiders argues that listing 12.05C does not require that such deficits be

"significant." *Id.*  Rather, listing 12.05C requires deficits in adaptive behavior

initially manifested during the developmental period (before age 22). *Id.*  Thus,

Zeiders contends that the ALJ's decision on this basis is in error. *Id.*  To the

contrary, Zeiders avers that the medical record reflects that after his head injury at

age nine, he sustained brain damage and was placed in special education in all of

his classes; that due to his head injury he experiences difficulties with reading and

understanding; and that he failed the GED examination twice. *Id.* at 17.  Zeiders

further alleges that his academic struggles are consistent with his intellectual

disability identified by both of the examining psychologists, and the ALJ's own medical expert, Dr. Anderson, who testified that his intellectual disorder and adaptive deficits began before age 22. *Id.* Therefore, Zeiders argues that the ALJ's alternative finding that his mental impairments do not meet or medically equal listing 12.05C is not supported by substantial evidence. *Id.*

In response, the Commissioner argues that the ALJ reasonably found that Zeiders physical impairments did not impose an "additional and significant work-related limitation of function," and that substantial evidence supports this finding. *Doc. 16* at 23. Additionally, the Commissioner concedes that the ALJ separately found that Zeiders cognitive and learning disorder were severe impairments at step two consistent with the criteria set forth in listing 12.05C. *Doc. 16*, at 24. The Commissioner argues, however, that the ALJ explained in the alternative that Zeiders' impairments did not satisfy listing 12.05C because Zeiders failed to establish that he had deficits in adaptive functioning initially manifested during the developmental period (before age 22). *Id.*

It is the responsibility of the ALJ to identify the relevant listed impairments given "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Burnett*, 220 F.3d at 120. If a claimant's impairments meet or equals one of the listed impairments, a claimant is *per se* disabled under the regulations. *Id.* at 119; 20 C.F.R. § 404.1520(d). However, to

qualify for benefits by showing that an impairment, or combination of

impairments, is equivalent to a listed impairment, the claimant bears the burden of

presenting "medical findings equivalent in severity to all the criteria for the most

similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); 20 C.F.R.

§ 404.1520(d).  An impairment, no matter how severe, that meets or equals only

some of the criteria for a listed impairment is not sufficient. *Zebley*, 493 U.S. at

521.

In this case, viewing the record as a whole, we find that the ALJ's step-three

determination is not supported by substantial evidence.  The ALJ determined that

Zeiders' mental impairments did not individually or collectively meet listing

12.05C. *Admin. Tr.* at 436-39.  But in making this finding, we take issue with

multiple fundamental flaws in the ALJ's analysis; specifically, the ALJ's reasoning

is threadbare and difficult to discern, she does not resolve inconsistencies in Dr.

Anderson's testimony or the record as a whole, she does not explain the basis for

discounting Ms. Morton's affidavit, she ignores record evidence without

explanation, and she does not make clear whether she attempted to apply listing

12.05C or a revised version of listing 12.05. *Id.* at 439.  In short, it appears to us

that the ALJ's 12.05C determination is based on one facet of Dr. Anderson's

testimony regarding "insufficient evidence [Zeiders] had limitation in adaptive

functioning before attaining the age of 22" without any indication as to why or any resolution as to other inconsistent evidence. *Id.*

Listing 12.05C "contains three requirements: a threshold deficit level of 'general intellectual functioning' ('[a] valid verbal, performance, or full-scale IQ of 60 through 70'); another 'mental impairment imposing an additional and significant work-related limitation of function'; and 'onset of the impairment before age 22.'" *Myers*, 684 F. App'x at 189 (quoting 20 C.F.R. 404, Subpart P, App. 1, Listing 12.05C).

Here, the Commissioner must concede the first requirement because the both the ALJ and Dr. Anderson found Zeiders' 2013 IQ test to be valid, and the ALJ found the 2013 IQ score to be consistent with Zeiders' 2019 IQ test. *Admin. Tr.* at 418-22, 445. Thus, the first requirement of 12.05C is satisfied because the ALJ accepted as valid Zeiders' IQ score of 67. *Id.* at 445. Second, the Commissioner expressly concedes that the second requirement is met. *Doc. 16* at 23-24 ("[T]he Commissioner concedes that the ALJ separately found [Zeiders'] cognitive disorder and learning disorder [are] severe."); *see also Hodges v. Colvin*, No. 2:13-cv-317, 2014 WL 931617, at *5 (W.D. Pa. March 10, 2014) ("[T]he 'other impairment' language in the second criterion equate[s] to a 'severe impairment' as defined in §§ 404.1520(c) and 416.920(c)—in other words, any severe impairment identified at step two of the ALJ's analysis.") (quoting *Markle v. Barnhart*, 324

F.3d 182, 188 (3d Cir. 2003)).  Thus, at step two of the sequential-evaluation process, the ALJ concluded that Zeiders had the following severe impairments: (1) learning disorder, (2) cognitive disorder, and (3) mild intellectual disorder.  *Admin. Tr.* at 436.  The second requirement of 12.05C of "another mental impairment," therefore, is satisfied by the Commissioner's own admission, and the ALJ's determination otherwise was plain error.[6]

At issue here then is whether Zeiders meets the third requirement and has shown the onset of his impairment before he reached age 22.  "Simply put, onset prior to age 22 may be demonstrated through other evidence, whether dating from the claimant's developmental period or later, so long as that evidence supports an inference of onset prior to age 22."  *Myers*, 684 F. App'x at 190 (citing *Markle*, 324 at 189).  We are satisfied that the evidence of record supports an inference of onset prior to age 22, and that the ALJ's step-three determination is not supported by substantial evidence.

The ALJ found that "there is insufficient evidence of record [Zeiders'] intellectual disorder manifested before he attained the age of 22." *Admin. Tr.* at 439.  She apparently, however, discounted Ms. Morton's affidavit, though she provides us with no explication whatsoever as to why—and the ALJ notes that the

---

[6] This is harmless error, contends the Commissioner, because the ALJ also determined that Zeiders fails to meet listing 12.05C due to the third requirement. *Doc. 16* at 24.  We disagree on both points as explained below.

affidavit does not establish *sufficient* limitations in adaptive functioning, itself an apparent concession that the affidavit shows some other kind of limitations in adaptive functioning. *Id.* at 439, 428-29 (Ms. Morton's affidavit explaining Zeiders' deficits from age 9). This, again, is error, and for two reasons. The initial error stems from the ALJ's apparent conclusion regarding Zeiders' lack of "deficits in adaptive functioning without announcing which of [the four allowable] standards [s]he was employing." *Guyer v. Berryhill*, No. 3:17-cv-00609, 2017 WL 5268467, at *8 (M.D. Pa. Nov. 13, 2017) (citing Technical Revisions to Medical Criteria for Determination of Disability, 67 Federal Register 20018-01 (Apr. 24, 2002) (explaining the four standards approved by the Social Security Administration for evaluating deficits in adaptive functioning)). We cannot meaningfully evaluate the ALJ's conclusion as to Zeiders' adaptive functioning without an explanation of her methodology.

The subsequent error arises from the ALJ's apparent dismissal of Ms. Morton's affidavit as not establishing *sufficient* limitations in adaptive functioning. *Admin. Tr.* at 439. Listing 12.05C does not speak to sufficient, severe, or serious limitations in adaptive functioning—it does not qualify these limitations. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05 (2015) (". . . general intellectual functioning with deficits in adaptive functioning."). This is in stark contrast to the revised listing 12.05, which does indeed require significant deficits in adaptive

21

functioning. *Compare id. with* 20 C.F.R. Part 404, Subpart P, App. 1, §

12.05(A)(2) (2018) ("Significant deficits in adaptive functioning . . ."), §

12.05(B)(2) (2018) (same).  Accordingly, it appears to us that the ALJ applied the

differing versions of 12.05 to Zeiders' claim, or at least so muddled her analysis

that we cannot clearly determine which she applied.  In either case, the ALJ's

analysis as to the third requirement of 12.05C is woefully inadequate, especially

given the ALJ's understanding that "the prior rules [12.05C] applied for this

particular case." *Admin. Tr.* at 462.

But the errors abound.  The ALJ appears to rely entirely on Dr. Anderson's

testimony to establish that "there is insufficient evidence [Zeiders] had limitations

in adaptive functioning before attaining the age of 22." *Admin. Tr.* at 439.  She

provides us with no citation to ease our inquiry. *Id.*  Throughout the hearing, both

Dr. Anderson and the ALJ confused listing 12.05C with the revised listing 12.05.

*Id.* at 471-500.  Dr. Anderson began his testimony by plainly opining that Zeiders

met both listing 12.05C and the revised listing 12.05. *Id.* at 475-76.  He also

appears to concede at multiple points that Zeiders had deficits in adaptive

functioning. *Id.* at 493 (conceding "the rest of the criteria of 12.05C" are met); 496

("I don't think it would be a *severe* deficit in terms of adaptive behavior.")

(emphasis added); 497 (explaining Ms. Morton's letter "would amount to deficits

in adaptive functioning").  While we do not doubt Dr. Anderson's qualifications or

expertise, our review of his testimony lays bare an inconsistent application of listing 12.05C in Zeiders' case.

Critically, the ALJ's conclusion that there is "insufficient evidence [Zeiders] had limitations in adaptive functioning before attaining the age of 22" is at odds with a great deal of evidence in the record, and the ALJ utterly failed to address any of these inconsistencies. *Id.* at 439.  This case is unlike *Gist*, where the ALJ correctly concluded "that the claimant failed to carry her burden of proof at Step Three because she presented no documentary or other evidence to substantiate her testimony that she was placed in special education classes or otherwise suffered from deficits in adaptive functioning" prior to age 22. *Gist v. Barnhart*, 67 F. App'x 78, 82 (3d Cir. 2003).  Here, evidence of record establishes that Zeiders had limitations in adaptive functioning prior to age 22, attended special education classes, and Zeiders himself testified as such. *See*, *e.g.*, *Admin. Tr.* at 38-40 (testifying as to Zeiders' placement in special education and problems at school), 325-29 (recording Zeiders' attendance in special education classes in Harrisburg City Schools by such notations as "Spec. Ed.," "Spec.," "Sp. Ed.," and "S.P.," "F's" in all but two tenth-grade classes, and repeating the tenth grade); 420 (finding that Zeiders quit school after tenth grade, was in special education throughout school, and has an IQ of 67 by Dr. Thomas); 485 (testifying that Dr. Anderson could infer based on the record that Zeiders' adaptive functioning

deficits began before age 22).  It was incumbent upon the ALJ to resolve these

conflicts in the record, and it is axiomatic that a single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence.  *Mason*, 994 F.2d at 1064.  Indeed, the "ALJ may

not reject pertinent or probative evidence without explanation." *Johnson*, 529 F.3d

at 204.  Otherwise, "the reviewing court cannot tell if significant probative

evidence was not credited or simply ignored." *Burnett*, 220 F.3d at 121 (quoting

*Cotter*, 642 F.2d at 705).  While the ALJ's inconsistent analysis continues

(*compare*, *e.g.*, *Admin. Tr.* at 443 (assigning Dr. Thomas's opinion little weight

and ignoring the entire basis for Zeiders' IQ scores) *with id.* at 445 (accepting IQ

scores from the same opinion by Dr. Thomas as valid while citing to a portion of

the record that does not exist)), we are satisfied that we have identified sufficient

errors in the ALJ's analysis to determine that her step-three findings are not

supported by substantial evidence, and we are further contented that Zeiders has

satisfied the third requirement of listing 12.05C.

Given the foregoing analysis, we find that the ALJ did not properly assess

the record evidence in concluding that Zeiders' mental impairments individually or

collectively failed to meet the criteria under listing 12.05C.  As Zeiders correctly

asserts, the medical record establishes a listing-level impairment pursuant to the

regulations.  Accordingly, we conclude that Zeiders is *per se* disabled under listing

12.05C, and the only remaining question is whether remand or reversal is appropriate.

### B. Reversal is Appropriate in this Case.

As a final matter, we address whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate.  We have authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991).  The Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (citing *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984)).  However, "if the Listings . . . mandate a finding of disability, then remand would be futile, since the outcome of the claim is a foregone conclusion." Kubitscheck & Dubin, *Social Security Disability Law and Procedure in Federal Court*, § 9:55 (2021) (internal footnotes omitted) *available on* Westlaw at SSFEDCT § 9:55; *see also Doak v. Heckler*, 790 F.2d 26, 30 (3d Cir. 1986) (reversing and awarding benefits where remand would be inappropriate because "a holding of disability is compelled").  Under these circumstances, "it is unreasonable for the court to give the ALJ another opportunity to consider new

evidence concerning the disability because the administrative proceeding would only result in further delay in the receipt of benefits." *Hoy v. Colvin*, No. 3:13-cv-01362, 2014 WL 4105304, at *8 (M.D. Pa. Aug. 20, 2014) (citing *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986)).

In this case, reversal and an award of benefits is proper because a holding of disability is compelled.  The foregoing analysis indicates that the ALJ's step-three evaluation is fundamentally flawed because that Zeiders' mental impairments individually or collectively satisfied the criteria under listing 12.05C, the record has been fully developed, and the record as a whole indicates that Zeiders is disabled and entitled to benefits.  We also note that Zeiders filed for Social Security benefits nearly a decade ago on March 26, 2012, and he has been subjected to three separate hearings before two different ALJs. *Doc. 1* at 2-3. Therefore, we conclude reversal and an award of benefits is the appropriate disposition. *See Podedworny*, 745 F.2d at 221.  Because we conclude that Zeiders meets listing 12.05C and is therefore *per se* disabled and entitled to an award of benefits, we need not reach Zeiders' other claims of error.

**VI. Conclusion.**

For the foregoing reasons, on this **9th** day of **April, 2021**, the decision of the Commissioner will be reversed, and the Commissioner will be directed to award benefits.  An appropriate order follows.

<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge